1

2

3

4

5

6                        UNITED STATES DISTRICT COURT

7                        EASTERN DISTRICT OF CALIFORNIA

8

9    KELVIN X. SINGLETON,                    1:08-cv-00095-AWI-GSA-PC

10              Plaintiff,                   SECOND SCREENING ORDER

11        v.                                 ORDER FOR PLAINTIFF TO EITHER
                                             (1) FILE A SECOND AMENDED
12   A. HEDGEPATH, et al.,                   COMPLAINT OR (2) NOTIFY THE COURT
                                             OF HIS WILLINGNESS TO PROCEED
13              Defendants.                  ONLY ON THE CLAIMS FOUND
                                             COGNIZABLE BY THE COURT
14
                                        /    THIRTY DAY DEADLINE
15

16   **I.     RELEVANT PROCEDURAL HISTORY**

17        Kelvin X. Singleton (plaintiff) is a state prisoner proceeding pro se and in forma

18   pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action

19   on January 18, 2008.  (Doc. 1.)  On November 18, 2008, the court screened plaintiff's

20   complaint and issued an order requiring plaintiff to amend the complaint to comply with

21   Federal Rule of Civil Procedure 18(a).  (Doc. 12.)  On December 9, 2008, plaintiff filed an

22   amended complaint, which is now before the court for screening.  (Doc. 14.)

23   **II.    SCREENING REQUIREMENT**

24        The court is required to screen complaints brought by prisoners seeking relief against a

25   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

26   The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

27   legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

28   that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

                                           1

1    § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

2    paid, the court shall dismiss the case at any time if the court determines that . . . the action or

3    appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

4    1915(e)(2)(B)(ii).

5    **III.    SUMMARY OF COMPLAINT**

6           Plaintiff is currently incarcerated at Kern Valley State Prison (KVSP) in Delano,

7    California, where the events at issue in this action allegedly occurred.  Plaintiff names as

8    defendants A. Hedgepath (Warden), S. Lopez (Chief Medical Officer), A. Youssef (Acting

9    Chief Medical Officer), M. Ali (Senior RN), M. Wright-Pearson (Senior RN), Dr. A. Akanno,

10   Dr. Qamar, Dr. Vasquez, and John/Jane Doe (Specialty Clinic Administrator).  All of the

11   defendants are employees of the California Department of Corrections and Rehabilitation

12   (CDCR) who were working at KVSP at the time of the events at issue.

13          Plaintiff makes the following allegations.

14          **A.      Medical Care for Plaintiff's Eye Condition**

15          On April 11, 2006, plaintiff was transferred from Lancaster State Prison to KVSP with

16   preexisting medical conditions, including glaucoma, refractory error, and chronic lower back

17   pain due to degenerative disc disease, bulging disc, and lordosis.  Plaintiff notified medical staff

18   of his medical conditions and showed them chronos from the sending prison.

19          On May 2, 2006, plaintiff filled out a medical form requesting to have his eyes checked

20   and his broken glasses replaced, stating that his eyes were hurting and he had headaches.  In

21   July 2006, plaintiff was seen by an optometrist and fitted for glasses.  When plaintiff requested

22   that his ocular pressure be checked due to his headaches and hurting eyes, the optometrist stated

23   he could not perform such a test because the prison did not have the necessary tools.  Plaintiff

24   contends that his pressure should be checked every ninety days.

25          On September 1, 2006, plaintiff met with Dr. Akanno and complained that his left eye

26   was very painful and had been swollen for three weeks.  Dr. Akanno filled out a specialty

27   request as "urgent" for plaintiff to be seen by an eye specialist.  However, Acting CMO Youssef

28   denied the  referral, and plaintiff was never seen by a specialist regarding the eye pain.

On October 28, 2006, after suffering continual pain and some lost vision in his left eye, plaintiff again submitted a request to be seen by an opthamologist.  Plaintiff's eye pressure had not been checked for nine months.

On November 28, 2006, as a result of Youssef's denial of the September 1, 2006 referral, Dr. Akanno referred plaintiff to optometry to have his eye pressure checked.

On February 13, 2007, plaintiff was seen by an optometrist and again fitted for glasses. Plaintiff explained about the pain in his eye and vision loss and asked if his eye pressure could be checked.  The optometrist stated that he did not have the equipment to check it.  The optometrist referred plaintiff to the opthamologist, who is the specialist for glaucoma and other eye disease, but plaintiff was never scheduled and seen by the specialist.

On March 19, 2007, plaintiff filed an emergency appeal complaining of his medical problem, including how Youssef rejected Dr. Akanno's initial referral to be seen for eye pain and vision loss.  The appeal was not processed as an emergency appeal as it should have been. On April 21, 2007, M. Ali, RN, interviewed plaintiff and told plaintiff that if he withdrew the appeal, Ali would ensure that plaintiff would be seen within thirty days by an opthamologist. Plaintiff withdrew the appeal in good faith.  Both defendants Ali and Wright-Pearson, RNs, agreed to these terms and signed off on the grievance.  However, plaintiff was never scheduled or seen as agreed upon.

On July 5, 2007, plaintiff re-submitted the withdrawn appeal, alleging deception by defendants Ali and Wright-Pearson and explaining that he had partial vision loss in his left eye. Plaintiff's criminal appeal attorney wrote a letter to defendants Warden Hedgepath and CMO Lopez regarding plaintiff's medical problems with his eye and back.  The letter urged them to abide by the Plata ruling and ensure plaintiff received the needed medical care.  Hedgepath and Lopez wrote the attorney back, assuring him that plaintiff was receiving adequate medical care. However, plaintiff was not receiving adequate medical care.

On August 31, 2007, plaintiff was finally examined by the specialist who administered a series of eye tests.  Plaintiff discovered through discussion with the doctor and the results of the visual field test that plaintiff has a partial loss of vision in his left eye.  The specialist requested

1   that plaintiff be returned in six weeks for follow-up care, but plaintiff was never returned to the

2   specialist and has not had his pressure checked to see if the glaucoma is worse.

3        Plaintiff contends that each defendant, including Hedgepath, Lopez, Youssef, Ali,

4   Wright-Pearson, and John/Jane Doe knew of plaintiff's medical condition and the risk of vision

5   loss in his left eye if treatment was denied or delayed and he was not seen by a specialist in a

6   timely manner.  The cause of the partial vision loss is not known because plaintiff has not been

7   examined again by the opthamologist.

8        Hedgepath, Lopez, and Youssef were responsible for ensuring that the specialty clinic

9   provided timely appointments, but they failed to do so.  Ali, Wright-Pearson, and John/Jane

10  Doe were to ensure that plaintiff was scheduled, because Doe was the scheduler and Ali and

11  Wright-Pearson assured plaintiff that he would be seen within thirty days of withdrawing his

12  grievance.

13       As a result of inadequate medical care, plaintiff suffered from serious pain and

14  headaches, emotional distress, and permanent loss of partial vision in his left eye.

15       **B.        Medical Care for Plaintiff's Lower Back**

16       On October 2, 2006, plaintiff filed an Accommodation Request on CDCR Form 1824

17  requesting medical care, to have his medical chronos renewed, pain medication and/or possible

18  surgery to relieve pain in his lower back.  The Form 1824, equivalent to a CDCR-602 form, was

19  filed after plaintiff had filed numerous medical requests to have the chronos renewed and

20  treatment for his back.  On April 17, 2007, the appeal was denied at the final level of review

21  without relief.

22       On April 11, 2007, plaintiff was examined by orthopedic specialist Dr. Lewis.  Lewis

23  prepared a report recommending plaintiff be seen by a pain management specialist, Dr. Langlos,

24  and be issued a lower bunk chrono.  Lewis recommended that plaintiff be returned to his office

25  in six weeks for a follow-up visit.  Plaintiff was not provided any of the treatment

26  recommended by Dr. Lewis.

27       Plaintiff has suffered daily since his arrival at KVSP as a result of denial of treatment.

28  Plaintiff is subjected to serious pain from having to climb up and jump down from the top

4

bunk, fifteen to twenty times daily, without any apparatus to assist him. Plaintiff suffers back pain throughout the night as a result of not having a medical mattress. Plaintiff suffers whenever he has to lie prone on the ground for hours during emergency situations because defendants will not provide him with a chrono, although medical records reveal that plaintiff should not extend his spine due to lordosis. Plaintiff contends the pain disrupts his daily activities.

On July 31, 2007, plaintiff filed a state writ of habeas corpus alleging inadequate medical care. The state court issued an order on November 1, 2007, giving time for the Federal Receiver to decide how to proceed on plaintiff's state writ and others to follow.[1]

Each named defendant was aware of the chronic lower back pain because Dr. Lewis prepared a report recommending treatment for plaintiff after he examined plaintiff on April 11, 2007. Plaintiff even prepared a letter to the CMO and Warden informing them that the primary care physician was not providing testing or treatment for plaintiff's back. Defendants were responsible for ensuring plaintiff received follow-up care and treatment as recommended by the specialist.

Defendants Hedgepath, Youssef, and Lopez were directly responsible for the overall daily operations of the medical department, including the specialty clinic. Defendants were to ensure that plaintiff's recommended follow-up appointments were scheduled in a timely manner, and that plaintiff received standard medical care.

Plaintiff seeks money damages, injunctive relief, declaratory relief, and attorney fees and court costs.

## IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[1]Plaintiff also refers to a report issued by the Federal Receiver on September 9, 2008, after the date this action was filed.

42 U.S.C. § 1983.  "Section 1983 . . .  creates a cause of action for violations of the federal

Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997)

(internal quotations omitted).  "To the extent that the violation of a state law amounts to the

deprivation of a state-created interest that reaches beyond that guaranteed by the federal

Constitution, Section 1983 offers no redress."  Id.

### A.    Federal Rule of Civil Procedure 18(a)

Pursuant to the controlling principle in Rule 18(a), "'A party asserting a claim to relief

as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as

independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party

has against an opposing party.' Thus multiple claims against a single party are fine, but Claim

A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.

Unrelated claims against different defendants belong in different suits, not only to prevent the

sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that

prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the

number of frivolous suits or appeals that any prisoner may file without prepayment of the

required fees. 28 U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed.

R. Civ. P 18(a).

### B.    Linkage Requirement

Section 1983 plainly requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

(1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in

another's affirmative acts or omits to perform an act which he is legally required to do that

causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th

Cir. 1978).  In order to state a claim for relief under § 1983, plaintiff must link each named

defendant with some affirmative act or omission that demonstrates a violation of plaintiff's

federal rights.

1   In the First Amended Complaint, plaintiff does not allege any facts whatsoever against

2   Dr. Qamar or Dr. Vasquez.  Therefore, plaintiff fails to state any claim for relief against

3   defendants Dr. Qamar or Dr. Vasquez.

4       **C.       Official Capacity**

5           Plaintiff states that he is suing all of the defendants in their official and

6   individual capacities.  The Eleventh Amendment bars damages actions under section 1983

7   against state officials in their official capacity.  See Doe v. Lawrence Livermore Nat'l Lab., 131

8   F.3d 836, 839 (9th Cir. 1997); Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1996); Pena v.

9   Gardner, 976 F.2d 469, 472 (9th Cir. 1992).  "However there is one exception to this general

10  rule: When sued for *prospective injunctive relief*, a state official in his official capacity is

11  considered a "person" for § 1983 purposes."  Doe, 131 F.3d at 839.  "[A] suit for prospective

12  injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment

13  immunity."  Id. (*citing* Ex parte Young, 209 U.S. 123 (1908).

14      The Eleventh Amendment does not bar suits seeking damages against state officials in

15  their personal capacity.  See Hafer v. Melo, 502 U.S. 21, 30 (1991); Ashker v. California Dep't

16  of Corrections, 112 F.3d 392, 394 (9th Cir.), cert. denied, 118 S. Ct. 168 (1997); Pena, 976 F.2d

17  at 472.  "Personal-capacity suits seek to impose personal liability upon a government official

18  for actions [the official] takes under color of state law.  See Kentucky v. Graham, 473 U.S. 159,

19  165 (1988).  Where plaintiff is seeking damages against a state official, such as in the instant

20  action, this "necessarily implies" a personal-capacity suit because an official-capacity suit

21  would be barred.  See Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973

22  n.16 (9th Cir. 1994); Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284

23  (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

24      Therefore, plaintiff fails to state a claim for damages under section 1983 against any of

25  the defendants in their official capacities.

26      **D.       Eighth Amendment Inadequate Medical Care**

27      "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

28  Punishment Clause depends upon the claim at issue . . . ."  Hudson v. McMillian, 503 U.S. 1, 8

1    (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and

2    responsive to contemporary standards of decency."  Id. at 8 (quotations and citations omitted).

3         A prisoner's claim of inadequate medical care does not constitute cruel and unusual

4    punishment unless the mistreatment rises to the level of "deliberate indifference to serious

5    medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference"

6    standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in

7    objective terms, "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994)(citing

8    Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Second, the prison official must act with a

9    "sufficiently culpable state of mind," which entails more than mere negligence, but less than

10   conduct undertaken for the very purpose of causing harm.  Farmer, 511 U.S. at 837.  A prison

11   official does not act in a deliberately indifferent manner unless the official "knows of and

12   disregards an excessive risk to inmate health or safety."  Id.

13        In applying this standard, the Ninth Circuit has held that before it can be said that a

14   prisoner's civil rights have been abridged, "the indifference to his medical needs must be

15   substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

16   cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing

17   Estelle, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing

18   or treating a medical condition does not state a valid claim of medical mistreatment under the

19   Eighth Amendment.  Medical malpractice does not become a constitutional violation merely

20   because the victim is a prisoner."  Id. at 106; see also Anderson v. County of Kern, 45 F.3d

21   1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992),

22   overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)

23   (en banc).  Even gross negligence is insufficient to establish deliberate indifference to serious

24   medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

25        "[M]ere delay of [medical treatment], without more, is insufficient to state a claim of

26   deliberate medical indifference."  Shapley v. Nevada Bd. of State of Prison Comm'rs, 766 F.2d

27   404, 407 (9th Cir.1985).  Where a prisoner is alleging a delay in receiving medical treatment,

28   ///

1  the delay must have led to further harm in order for the prisoner to make a claim of deliberate

2  indifference to serious medical needs. McGuckin at 1060 (citing Shapley, 766 F.2d at 407).

3  However, prison officials are deliberately indifferent to a prisoner's serious medical

4  needs when they "interfere with treatment once prescribed." Estelle, 429 U.S. at 104-05.  The

5  Ninth Circuit has found deliberate indifference where prison officials "deliberately ignore the

6  express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the

7  prisoner." Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992); McGuckin, 974 F.2d at

8  1062 (where surgery recommended by prisoner's prior physician was severely delayed, court

9  was unable hold doctors liable because prison administrators, not the doctors, were responsible

10  for scheduling treatment).

11  Also, a plaintiff is entitled to an inference at the summary judgment stage (and therefore

12  also at the pleading stage) that prison administrators are liable for deliberate indifference when

13  they knowingly fail to respond to an inmate's requests for help.  See Jett v. Penner 439 F.3d

14  1091, 1098 (9th Cir. 2006) citing Estelle, 429 U.S. at 104; Greeno v. Daley, 414 F.3d 645, 652-

15  53 (7th Cir. 2005); and Moore v. Jackson, 123 F.3d 1082, 1087 (8th Cir. 1997).  However,

16  "[o]nce a [non-medical] prison grievance examiner becomes aware of potential mistreatment,

17  the Eight Amendment does not require him or her to do more than 'review [the prisoner's]

18  complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment."

19  Greeno, 414 F.3d at 656 (citing Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004).

20      **1.    Eye Condition**

21  Plaintiff claims he was given inadequate medical treatment for his eye condition.

22  Plaintiff alleges he has glaucoma, a serious eye condition that, if not properly treated, can lead

23  to blindness.  Plaintiff complains of headaches, eye pain, and a swollen left eye with partial

24  vision loss.  Thus, plaintiff has alleged facts to show a serious medical need.

25      **a.    Defendant Dr. A. Akanno**

26  Plaintiff alleges that on September 1, 2006, he told defendant Dr. A. Akanno, a primary

27  care physician, that his left eye was in serious pain, that it felt swollen and had been for three

28  weeks.  Plaintiff alleges that Akanno filled out an "urgent" request to have plaintiff's eye

1  problem evaluated by a specialist.  Plaintiff alleges he was not seen by the specialist because

2  Acting CMO Youssef denied the referral.  Plaintiff alleges that on October 28, 2006, he

3  submitted a request to be seen by the opthamologist, due to continuing pain and some lost

4  vision in his left eye.  Plaintiff alleges he had not had his eye pressure measured in nine months.

5  Plaintiff alleges that Akanno referred plaintiff to optometry to have his eye pressure checked.

6  Plaintiff alleges he was never scheduled and seen by the specialist.  None of the facts alleged

7  against Akanno demonstrate deliberate indifference under the Eighth Amendment. Therefore,

8  plaintiff has not stated a cognizable claim for Eighth Amendment medical care against

9  defendant Akanno under § 1983.

10                    **b.      Defendant Youssef (Acting CMO)**

11         Plaintiff alleges that defendant Dr. Youssef denied the September 1, 2006 "urgent"

12  referral made by Dr. Akanno for plaintiff to see a specialist.  Because plaintiff alleges that  Dr.

13  Youssef severely delayed the recommendation by plaintiff's prior physician, he states a

14  cognizable claim against Dr. Youssef for deliberate indifference under the Eighth Amendment.

15                 **c.      Defendants Ali and Wright-Pearson (Senior RNs)**

16         Plaintiff alleges that on March 19, 2007, he filed an emergency appeal complaining of

17  his medical problem, including how Youssef rejected Akanno's initial referral.  Plaintiff alleges

18  that on April 21, 2007, defendant M. Ali, a Senior RN, interviewed plaintiff and told him that if

19  he withdrew the appeal, Ali would ensure that plaintiff would be seen by an opthamologist

20  within thirty days.  In good faith, plaintiff withdrew the grievance.  Both defendants Ali and

21  defendant Wright-Pearson, also a Senior RN., agreed to these terms and signed off on the

22  grievance.  However, plaintiff was never scheduled or seen as agreed upon by Ali and Wright-

23  Pearson.  With these allegations, the court finds that plaintiff states a cognizable claim against

24  defendants Ali and Wright Pearson for deliberate indifference to plaintiff's medical care under

25  the Eighth Amendment.

26                 **d.      Defendants Warden Hedgpath and CMO Lopez**

27         Plaintiff alleges that in July 2007, his criminal defense attorney wrote to defendants

28  Warden Hedgepath and CMO Lopez regarding plaintiff's medical problems with his left eye

1  and lower back, urging them to abide by the <u>Plata</u> decision and ensure that plaintiff received the

2  medical care he needs.  Plaintiff alleges that Hedgepath and Lopez wrote the attorney back

3  assuring him that plaintiff was receiving adequate medical care, when he was not.  Under

4  <u>Greeno</u>, plaintiff's allegations against Hedgepath, a non-medical employee, do not rise to the

5  level of deliberate indifference under the Eighth Amendment.  <u>Greeno</u>, 414 F.3d  at 656.

6  However, the court finds that plaintiff  states a cognizable claim for deliberate indifference

7  against Lopez, who is a medical employee, for knowingly failing to respond to plaintiff's

8  attorney's letter for help.

9           **e.     General Allegations**

10         Plaintiff alleges that defendants Hedgepath, Lopez, Youssef, Ali, Wright-Pearson and

11  John/Jane Doe, Specialty Services Administrator were responsible for ensuring that the

12  specialty clinic provided timely appointments with the specialist but failed to do so.  Plaintiff

13  alleges that John/Jane Doe was the appointment scheduler.  However, plaintiff does not make

14  an actual connection or link between an act or failure to perform a legally required act by each

15  of the named defendants, with the deprivation claimed by plaintiff.  Therefore, the court finds

16  that these general allegations do not state a claim under § 1983.

17         **2.     Lower Back Pain**

18         Plaintiff claims he was given inadequate medical treatment for chronic lower back pain.

19  Plaintiff claims that the pain disrupts his normal daily activities because he is forced to sleep on

20  a top bunk which requires him to climb up and jump down fifteen-to-twenty times daily without

21  any apparatus to help him.  Plaintiff claims he suffers pain nightly as a result of not having his

22  medical mattress.  Thus, plaintiff has alleged sufficient facts showing a serious medical need.

23         In his discussion of medical treatment for his back pain, plaintiff only names Warden

24  Hedgepath, acting CMO Youssef, and CMO Lopez as identifiable defendants.  Plaintiff alleges

25  that "each named defendant" was aware of the chronic lower back pain after Dr. Lewis

26  examined him, because Lewis prepared a report recommending treatment for plaintiff.  Plaintiff

27  also alleges that he prepared a letter to the CMO and Warden regarding the physician's failure

28  to provide testing or treatment for his lower back pain.  As discussed above, because Lopez is a

medical employee, plaintiff states a cognizable claim against him under <u>Greeno</u> for deliberate indifference, for knowingly failing to respond to plaintiff's letter for help.  <u>Greeno</u>, 414 F.3d  at 656.

Plaintiff also makes general allegations about how defendants Hedgepath, Youssef and Lopez were directly responsible for daily operations of the medical department.  As also discussed above, such general allegations without the required linkage do not state a claim under § 1983.

### C.   <u>Supervisory Liability</u>

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of <u>respondeat superior</u> and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978), <u>cert. denied</u>, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983.  <u>See</u> <u>Leatherman v. Tarrant County Narcotics Unit</u>, 507 U.S. 163, 168 (1993).

Defendants Warden Hedgepath, CMO Lopez, and Acting CMO Youssef are employed in supervisory positions.  Because the court finds that Warden Hedgepath did not personally participate in the alleged deprivation of constitutional rights; know of the violations and fail to act to prevent them; or promulgate or implement a deficient policy, plaintiff fails to state a claim against Hedgepath based on supervisory liability.  However,  Plaintiff has alleged

///

1  sufficient facts to proceed with a claim for supervisory liability against defendants Lopez, and

2  Youssef in their individual capacities.

3  **V.     CONCLUSION**

4      Based on the foregoing analysis, the court finds that plaintiff's  amended complaint

5  states cognizable claims for relief under section 1983 against defendants S. Lopez , A. Youssef,

6  M. Ali, and M. Wright-Pearson for failure to provide adequate medical care under the Eighth

7  Amendment.  However, plaintiff's complaint does not state any other claims upon which relief

8  may be granted under section 1983.  The court will provide plaintiff with the opportunity to file

9  a Second Amended Complaint, if plaintiff wishes to do so.

10     If plaintiff does not wish to file a Second Amended Complaint and is agreeable to

11 proceeding only against defendants Lopez, Youssef, Ali and Wright-Pearson on his medical

12 care claim, plaintiff may so notify the court in writing.  The court will then issue Findings and

13 Recommendations recommending that the remaining claims and defendants be dismissed from

14 this action, and will forward plaintiff four summonses and four USM-285 forms to fill out and

15 return to the court.  Upon receipt of these documents, the court will direct the United States

16 Marshal to initiate service of process on defendants Lopez, Youssef, Ali and Wright-Pearson.

17     In the event that plaintiff does wish to file a Second Amended Complaint, plaintiff is

18 advised Local Rule 15-220 requires that an amended complaint be complete in itself without

19 reference to any prior pleading.  As a  general rule, an amended complaint supersedes the

20 original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an

21 amended complaint, the original pleading no longer serves any function in the case.  Therefore,

22 in an amended complaint, as in an original complaint, each claim and the involvement of each

23 defendant must be sufficiently alleged.

24     If plaintiff chooses to file a Second Amended Complaint, plaintiff must demonstrate

25 how the conditions complained of have resulted in a deprivation of plaintiff's constitutional

26 rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in

27 specific terms how each named defendant is involved.  There can be no liability under 42

28 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's

1   actions and the claimed deprivation.  Rizzo, 423 U.S. 362; May v. Enomoto, 633 F.2d 164, 167

2   (9th Cir. 1980); Johnson, 588 F.2d at 743.  The amended complaint must be clearly entitled

3   "Second Amended Complaint" and refer to the case number 1:08-cv-00095-AWI-GSA-PC.

4          Plaintiff should note that although he has been given the opportunity to amend, it is not

5   for the purposes of adding new defendants relating to issues arising after January 18, 2008.

6   Plaintiff should also take care to include only those claims that have been exhausted prior to the

7   initiation of this suit on January 18, 2008.   In addition, plaintiff may not file unrelated claims

8   against different defendants in violation of Rule 18(a), as discussed above.

9          Based on the foregoing, it is HEREBY ORDERED that:

10  1.     The Clerk's Office shall send plaintiff a civil rights complaint form;

11  2.     Within **thirty (30) days** from the date of service of this order, plaintiff must

12         either:

13         a.     File a Second Amended Complaint curing the deficiencies identified by

14                the court in this order, or

15         b.     Notify the court in writing that he does not wish to file a Second

16                Amended Complaint and wishes to proceed only against defendants

17                Lopez, Youssef, Ali and Wright-Pearson on his cognizable medical care

18                claims; and

19  3.     If plaintiff fails to comply with this order, this action will be dismissed for

20         failure to obey a court order.

22     IT IS SO ORDERED.

23  **Dated:   January 14, 2009            /s/ Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE